
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **EDWIN PETER HEALEY** | § | Case No. 15-60471 |
| xxx-xx-9134 | § | |
| | § | |
| Debtor | § | Chapter 7 |

# MEMORANDUM OF DECISION

This matter is before the Court upon hearing of the Motion to Examine Transactions with Debtor's Counsel (the "Motion") filed by Edwin N. Healey (the "Movant"), a creditor and party-in-interest in the above-referenced bankruptcy case. The Motion challenges the propriety of a retainer paid by the Debtor, Edwin Peter Healey (the "Debtor") to his state court attorneys in the days immediately prior to the filing of the Debtor's Chapter 7 petition for the purpose of funding a post-petition appeal of a pre-petition state court judgment in favor of the Movant. Upon conclusion of the hearing and the submission of post-hearing briefing by the parties, the Court took the matter under advisement. This memorandum of decision disposes of all issues pending before the Court.[1]

## Background

Prior to the filing of his bankruptcy petition, the Debtor, Edwin Peter Healey, was a defendant in a lawsuit pending before the 3rd Judicial District Court in and for

---

[1] This Court has jurisdiction to consider the Complaint pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157(a). The Court has the authority to enter a final judgment in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (B), and (O).

Henderson County, Texas under Case No. 2014C-0638 and *Edwin N. Healey v. E. Peter Healey and Paul C. Healey* (the "Lawsuit"). The Debtor was represented in the Lawsuit by Steve Stark of the law firm of Stark & Groom, L.L.P. ("S&G") in Athens. Based upon jury findings issued on June 18, 2015, after a multi-day trial, the state court entered a Final Judgment on June 30, 2015, against the Debtor for actual damages in the amount of $243,615.42, statutory damages of $1,000 under the Texas Theft Liability Act, exemplary damages in the amount of $50,000, attorney's fees in the aggregate amount of $107,084.30, contingent attorney's fees in the event of appellate review, and post-judgment interest at 5% per annum (the "State Court Judgment").[2]

Between the time of the jury verdict and the entry of the State Court Judgment, the Debtor was consulting with the Tyler law firm of McNally & Patrick, L.L.P. regarding the advisability of a possible bankruptcy filing. As Mr. Stark dealt with the state court in the post-verdict period prior to the entry of judgment, he was aware that his client was considering his bankruptcy options. In the weeks prior to the bankruptcy filing, Mr. Stark directly communicated with the bankruptcy lawyers several times regarding the nature of the state court suit, the specific jury findings, and the timing of the bankruptcy filing and its impact upon the Debtor's appellate remedies.[3]

On July 16, 2015, after the firm had performed significant preparatory work on his behalf, the Debtor formally retained McNally & Patrick to file a Chapter 7 liquidation

---

[2] Ex. 5.

[3] Ex. 3 at p. 28; Ex. 7 at p. 1.

case on his behalf.[4] One day later, on July 17, 2015, the Debtor took two commission checks payable to him from Horizon Business Group, LLC totaling $27,000 and endorsed them to the benefit of S&G.[5] Mr. Stark placed the $27,000 in S&G's IOLTA account for use in post-judgment activities as prerequisites to an appeal of the State Court Judgment or, in Mr. Stark's words, as a "deposit against the costs of appeal."[6] No written retention agreement was executed between the Debtor and S&G regarding these post-judgment services. However, in order to separate these post-judgment services from the unpaid amounts for S&G's pre-petition services that would constitute a claim in the bankruptcy case, the parties understood that S&G would separately bill attorney services at $250/hour and paralegal services at $125/hour against the paid retainer for the post-judgment appellate services to be rendered for the benefit of the Debtor.

Less than a week after the new retainer was paid to S&G, the Debtor filed his Chapter 7 petition on July 23, 2015.[7] Jason R. Searcy was appointed as the Chapter 7 Trustee in the case.

The Debtor filed his original schedules and statements with the petition and filed significant amendments to most of them one month later. Although the transfer of the $27,000 retainer to S&G on the eve of the bankruptcy filing was referenced in response to

---

[4] Ex. 7.

[5] Ex. 10.

[6] *Id*. at p. 4.

[7] Ex. 1.

Question 10 of the Debtor's Statement of Financial Affairs, no Rule 2016(b) Statement has been filed by S&G in the bankruptcy case.[8]

Since the deposit of the retainer into S&G's IOLTA account, it has made four disbursements from the account, primarily for transcription costs relating to the Debtor's appeal of the State Court Judgment. Two payments totaling $7,005 were made from the retainer at or near the date of the bankruptcy filing.[9] Two more payments totaling $735 were tendered for appellate costs in 2016.[10] Thus, $7,740 has been expended from the account, leaving a balance of $19,260.[11] The record preparation has yet to be completed and no briefing schedule has been issued pertaining to the appeal.

The Movant seeks an examination of the transactions between the Debtor and S&G and a resulting order compelling S&G to disgorge the $27,000 for its failure to disclose the tendered retainer and for the excessive nature of the compensation tendered pursuant to 11 U.S.C. §329 and Fed. R. Bankr. P. 2016(b). Though it admits that it failed to file any 2016(b) statement, S&G contends that the retainer was adequately disclosed by

---

[8] The Debtor also paid the sum of $300 to S&G in August 2015, although the evidence tendered fails to identify clearly the source of such payment or to establish that the payment was derived from pre-petition funds. The Debtor also selectively omitted S&G from its list of general unsecured creditors, notwithstanding the purported existence of a significant pre-petition legal bill.

[9] A $2,400 payment to a court reporter was made two days prior to the bankruptcy filing on July 21, 2015 which was honored on that date. *See* Ex. 6 and Ex. 4 at p. 1 and p. 4. Another $4,605 payment to a court reporter occurred on the actual bankruptcy petition date of July 23, 2015. It does not appear that the second check was honored by the firm's financial institution prior to the filing of the bankruptcy petition. *Id*.

[10] Ex. 6

[11] *Id.*

the Debtor in his Statement of Financial Affairs and that, in light of such disclosure, disgorgement is not required. It further asserts that the payment is protected from disgorgement, despite any lack of compliance with Rule 2016(b), because it constituted an advance payment retainer.

## **Discussion**.

A complete disclosure of the amounts paid to an attorney for a debtor within one year before the filing of a bankruptcy petition is mandated by 11 U.S.C. §329(a)[12] and Fed. R. Bankr. P. 2016(b)[13] if the amounts paid are *in contemplation of . . . or . . . . in connection with . . .* the bankruptcy case. (emphasis added). If a compensation payment is subject to disclosure under either test, §329(b) of the Bankruptcy Code[14] and Fed. R.

---

[12] §329(a) states that

Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered *in contemplation of or in connection with* the case by such attorney, and the source of such compensation. (emphasis added).

[13] Rule 2016(b) provides that

Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code . . . . A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.

[14] §329(b) declares that:

(b) If such compensation [paid to a debtor's attorney] exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to--
    (1) the estate, if the property transferred--

Bankr. P. 2017[15] authorize the Court to act upon that disclosure by determining whether such payments were excessive and by ordering the return of all or any part of such payments. These disclosure and enforcement provisions are "part of a regulatory scheme put in place to combat overreaching by debtor's counsel, . . . enacted in response to the concern that payments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny." *In re Wegesend*, 2014 WL 3051218, at *4 (Bankr. D. Haw., July 3, 2014), citing *In re 268 Ltd.*, 789 F.2d 674, 677 (9th Cir.1986) (internal quotations and certain citations omitted). The purpose of these interacting provisions "is to create transparency as to how much debtor's counsel is being paid and by whom — so that both reasonableness and conflicts of interest can be considered." *In re Ward*, 546 B.R. 667, 680 (Bankr. N.D. Tex. 2016).

These disclosures are mandatory. *In re Scott*, 531 B.R. 640, 645-46 (Bankr. N.D. Miss. 2015). As one court concisely described the duty to disclose:

---

      (A) would have been property of the estate; or
      (B) was to be paid by or on behalf of the debtor under a plan under
            chapter 11, 12, or 13 of this title; or
  (2) the entity that made such payment.

[15] Rule 2017(a) implements §329(b) by providing that:

On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor or before entry of the order for relief in an involuntary case, to an attorney for services rendered or to be rendered is excessive.

> [A]n attorney must lay bare all [his] dealings with the debtor concerning compensation. The disclosures he makes must be precise and complete. Coy or incomplete disclosures that force the court to ferret out pertinent information will not do, even if they are merely the result of negligence or inadvertence. Very simply, anything less than the full measure of disclosure is unacceptable.

*In re Jackson*, 401 B.R. 333, 339–40 (Bankr. N.D. Ill. 2009) (citations and internal quotations omitted).

Though usually applied to an attorney rendering bankruptcy services to a debtor, the applicability of these disclosure requirements is not so narrowly drawn. "These provisions apply to *every* attorney employed by *every* debtor in *every* chapter, regardless of the purpose for which the attorney is retained, and notwithstanding the fact that an attorney will not be seeking formal employment by, nor compensation from, the bankruptcy estate." *In re Fair*, 2016 WL 3027264, at *13 (Bankr. N.D. Tex., May 18, 2016) (emphasis added). As one court has stated

> The obligation to disclose fees under § 329 is not limited to services in the main bankruptcy case. Attorneys are supposed to disclose all fees for services rendered "in contemplation of or in connection with" a case. *See* 11 U.S.C. § 329(a). That phrase has been broadly construed to encompass a variety of pre-petition legal services, even if not directly related to the bankruptcy filing itself.

*In re Pawlak*, 483 B.R. 169, 180 (Bankr. W.D. Wis. 2012). Both the Debtor and S&G challenge whether the amounts paid to S&G were in contemplation of or in connection with the Debtor's bankruptcy case such as would subject the firm to the duty of disclosure

under §329 and Rule 2016(b).

As this Court previously examined in *In re Mayeaux*, 269 B.R. 614 (Bankr. E.D. Tex. 2001),

> A fee payment is made "in contemplation of" a bankruptcy case if the underlying professional services were rendered at a time when the debtor was contemplating bankruptcy. This subjective test is based upon the state of mind of the debtor, "i.e., whether, in making the transfer, the debtor is influenced by the possibility or imminence of a bankruptcy proceeding." *Wootton v. Ravkind (In re Dixon)*, 143 B.R. 671, 675, n.3 (Bankr. N.D. Tex. 1992).

*Id*. at 622. There is no serious doubt under these facts that the delivery of the retainer to S&G was made by the Debtor in contemplation of a bankruptcy case. With the entry of an adverse state court judgment against him, the Debtor was clearly contemplating the benefits and burdens of a bankruptcy filing. Mr. Stark had several conversations with McNally & Patrick in the days leading up to the bankruptcy filing and the Debtor undoubtedly had a motivation to retain his state court counsel in order to pursue an appeal of the adverse judgment. With Mr. Stark expressing legitimate concerns about the impact of the bankruptcy case and the means by which he would be compensated for the post-petition appellate work, the Debtor sought to allay those concerns by tendering $15,000 toward pre-petition fees within the preference period[16] and tendering the $27,000 retainer only six days prior to the filing of the bankruptcy petition. Having tendered the retainer to S&G at a time when his bankruptcy filing was imminent, the Debtor made that fee

---

[16] Ex. 2 at p. 3.

payment in contemplation of his bankruptcy case and it is therefore subject to examination by this Court.

The fee payment to S&G is also subject to examination under §329 because it was made by the Debtor "in connection with" his bankruptcy case. This prong is not limited to the rendition of professional services within the bankruptcy case. Again, as outlined in *Mayeaux*,

> [i]f it can be objectively determined that the services rendered or to be rendered by the attorney have or will have an impact on the bankruptcy case, then such services are deemed to have been rendered in connection with the bankruptcy case and the attorney has a duty to disclose any compensation received or to be received for such services.

*Mayeaux*, 269 B.R. at 623.

Applying this objective standard, the evidence clearly demonstrates that the services proposed to be rendered by S&G in the post-petition period would have an impact on the bankruptcy case. The Court's claims registry reveals that the claims of the Movant and the other state court plaintiffs constitute approximately 98% of the timely-filed claims in this case.[17] If the claims arising from the entry of the final judgment in the state court case could be reversed on appeal, it would have a significant impact on the administration of this bankruptcy case.

Therefore, under the evidence presented and in light of the broad interpretation

---

[17] Of course, the domination of the judgment-based claims is largely attributable to the actions of the Debtor. The schedules and statements disclose a number of preferential payments made by the Debtor on various unsecured debts in the weeks prior to filing.

which has historically been applied under §329(a), this Court concludes that the retainer paid by the Debtor to S&G in the pre-petition period was made "in contemplation of or in connection with" this bankruptcy case which imposed upon S&G a duty to disclose the payment pursuant to §329(a) and Fed. R. Bankr. P. 2016(b) and now renders the propriety of such payment subject to examination. Yet S&G contends that, even if a Rule 2016(b) statement should have been filed, the payment is protected from possible disgorgement because it constitutes an advance payment retainer.

Such a contention is clearly erroneous. Any payment falling within the scope of §329(a) must be disclosed in a timely and comprehensive fashion regardless of its characterization, *Barron v Countryman,* 432 F.3d 590, 595-96 (5th Cir. 2005), and a bankruptcy court is fully authorized "to order disgorgement as a sanction to debtors' counsel for nondisclosure," *Arens v. Boughton (In re Prudhomme)*, 43 F.3d 1000, 1003 (5th Cir. 1995), regardless of the characterization of the payment or its source. *Anderson v. Anderson (In re Anderson)*, 936 F.2d 199, 204 (5th Cir. 1991) [noting that attorney has no absolute right to compensation absent compliance with the Bankruptcy Code and Bankruptcy Rules); *In re Sandpoint Cattle Co., LLC*, 2016 WL 4072898, at *8 (Bankr. D. Neb. July 28, 2016) (citing *Henderson v. Kisseberth (In re Kisseberth)*, 273 F.3d 714, 721 (6th Cir. 2001)) [confirming that "bankruptcy courts have broad and inherent authority to deny any and all compensation where an attorney fails to satisfy the requirements of the Code and Rules"]. Thus, regardless of its characterization or

category,[18] the retainer paid to S&G remains "subject to disclosure and reasonableness review under §329 of the Code." *Barron,* 432 F.3d at 595-96.

Though S&G has clearly violated the disclosure requirements imposed by §329, the Court possesses a broad discretion in designing an appropriate sanction for that violation. *In re Miller Auto. Group, Inc.*, 521 B.R. 323, 332 (Bankr. W.D. Mo. 2014); *Mayeaux*, 269 B.R. at 621; and cases cited therein. The payment of the retainer was referenced in the Debtor's Statement of Financial Affairs and there is no evidence that there was any intentional effort to conceal the payment. While this mode of disclosure undoubtedly fails to comply with the requirements of the Bankruptcy Code, the evidence suggests that, as a state court attorney generally unfamiliar with bankruptcy requirements, Mr. Stark was relying upon the guidance of the Debtor's bankruptcy attorneys and that his firm's failure to comply with the disclosure requirements was inadvertent rather than a willful disregard of the requirements. Thus, the Court does not believe that a fee forfeiture is warranted solely as a sanction for nondisclosure.

However, that belief does not warrant the retention of the security retainer by S&G. "The court has the authority to disregard a fee agreement between a debtor and counsel in determining the reasonableness of counsel's fees under section 329(a),"

---

[18] Yet, in any event, S&G does not hold an advance payment retainer. Mr. Stark clearly testified that the retainer was a "deposit against the costs of appeal" that was deposited in his firm's IOLTA account and would be slowly depleted as fees and expenses were incurred in the post-petition period. Such arrangement clearly constitutes a "security retainer" for prospective services, *Barron*, 432 F.3d at 595-96, and because the Debtor retained an interest in the funds pending the rendition of such legal services, the funds became property of the bankruptcy estate six days later on the bankruptcy petition date. *Id*.

*Brown v. Luker (In re Zepecki)*, 277 F.3d 1041, 1046 (8th Cir. 2002), and §329 mandates the return of any portion of a covered payment to the extent that it exceeds the reasonable value of any services to be performed in exchange for that fee. "The standard applied under §329(b) to determine the reasonable value of fees is set forth in §330 [and] . . . the burden is upon the applicant to demonstrate that the fees are reasonable." *Shalaby v U.S. Trustee (In re Nakhuda)*, 544 B.R. 886, 902 (B.A.P. 9th Cir. 2016); 3 COLLIER ON BANKRUPTCY ¶ 329.04[1] at p.329-18 (16th ed. 2016). "[T]he remedy for excessiveness is return of any payment to the extent it exceeds the reasonable value of services rendered." *Prudhomme*, 43 F.3d at 1003.

Because the security retainer was paid to S&G on the eve of the bankruptcy "in contemplation of or in connection with" this bankruptcy case and because the retained funds became property of the bankruptcy estate upon the Petition Date, the retainer exceeds the reasonable value of any services to be rendered by S&G in the post-petition period because the firm has not been authorized to act on behalf of the estate and, thus, S&G is not authorized to be paid compensation from estate funds for any post-petition services. "If [an] attorney is to be paid from estate funds under §330(a)(1) in a Chapter 7 case, he must be employed by the trustee and approved by the Court." *Lamie v. US. Trustee*, 540 U.S. 526, 538-39 (2004). *See also, In re Glimcher,* 469 B.R. 835, 842 (Bankr. D. Ariz. 2012) ["*Lamie* leaves no room for debate that a Chapter 7 debtor's attorneys cannot be paid from the estate unless they are employed by the Trustee and such employment is approved by the Court."]. That has not occurred in this case. In the

absence of proper professional retention under the employment standards of §327 and the subsequent submission of requests for compensation under either §330 or §331, S&G is not entitled to <u>any</u> compensation from the estate and any agreement to provide the firm with such compensation in the post-petition period in violation of the Bankruptcy Code and Rules[19] must be canceled under §329(b) and the funds returned to the estate.[20] *Zepecki*, 277 F.3d at 1046.

Based upon the foregoing, the Motion to Examine Transactions with Debtor's Counsel filed by Edwin N. Healey is granted in part and denied in part and, excluding the $2,400 payment which was utilized and had cleared prior to the filing of the bankruptcy petition,[21] the remaining $24,600 of the security retainer paid to S&G must be disgorged and returned to the estate within thirty (30) days.

This memorandum of decision constitutes the Court's findings of fact and

---

[19] As was recognized with regard to Chapter 7 bankruptcy lawyers in *In re Blackburn*, 448 B.R. 28 (Bankr. D. Idaho 2011):

> Permitting debtors' attorneys not employed under §327 to draw upon prepetition security retainers for chapter 7 fees would significantly undermine §330 and the *Lamie* decision. Security retainers are estate property. By drawing upon such retainers for chapter 7 services, debtors' attorneys would be receiving compensation from the estate without having been employed under §327 and their fees approved under §330 or §331— in clear contradiction of the rule articulated in *Lamie*.

*Id*. at 38.

[20] Indeed, any post-petition distribution of the retainer by S&G would actually result in a violation of the automatic stay. *See, e.g., In re Prod. Associates, Ltd.*, 264 B.R. 180, 185 (Bankr. N.D. Ill. 2001).

[21] *See supra* note 10.

conclusions of law[22] pursuant to Fed. R. Civ. P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014. An appropriate order shall be entered which is consistent with this opinion.

Signed on 08/08/2016

*[signature]*

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE

---

[22] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.